**Julio MATIENZA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05-84-00690-CR.**

Court of Appeals of Texas,
Dallas.

Oct. 16, 1985.

Rehearing Denied Nov. 8, 1985.

Norman P. Hines and Noel Portnoy, Dallas, for appellant.

Constance M. Maher, Asst. Dist. Atty., Dallas, for appellee.

Before SPARLING, VANCE and MALONEY, JJ.

VANCE, Justice.

Appellant, Julio Matienza, was convicted of unlawful possession of cocaine, a controlled substance, and sentenced to five years' imprisonment. In two grounds of error, appellant argues that the trial court erred by overruling his motion to suppress evidence allegedly tainted by an illegal arrest. We need not determine whether the complained-of detention was a "seizure" within the meaning of United States Constitution Amendments IV, XIV, or, if so, whether the seizure, if any, was legal because we hold that an intervening criminal act purged the taint of any illegality in the initial stop. Accordingly, we affirm.

Stanley Michael Chapman, allegedly an informant for narcotics officer Shaw, told narcotics officer Flynn that appellant "had cocaine in his apartment and ... always carried a gun." Flynn telephoned Shaw, but the record does not reflect the nature or details of this conversation. Preparatory to seeking a search warrant, Chapman, Flynn, and Flynn's partner, Officer King, drove to appellant's apartment complex to determine appellant's apartment number. As the officers were walking near appellant's apartment, appellant and an unidentified man exited the apartment, causing the officers to disperse so as not to be seen or identified.

Chapman and the two officers returned to the apartment and, without seeing appellant, ascertained the apartment number. They then walked to their unmarked police car, intending to return to the police station

to give officer Shaw the information necessary to obtain the search warrant. However, after driving a few blocks, they decided to return to the apartment complex, and Chapman and Flynn positioned themselves below appellant's apartment. After approximately five minutes, appellant stepped out of the apartment, carrying a suitcase in his left hand; his right hand was concealed in his pocket.

As appellant descended the stairs, Flynn stepped forward, carrying a badge in one hand and a gun in the other. He identified himself as a police officer and ordered appellant to "freeze." Appellant raised his right hand and allegedly pointed a gun at Flynn. Flynn fired a shot at appellant but missed him. Flynn reached into appellant's right coat pocket and recovered a .380 automatic pistol, loaded with thirteen rounds of ammunition. A bullet was in the chamber, and the gun's safety mechanism was disengaged. King arrived to assist, and the officers arrested appellant for attempted capital murder of a police officer and for unlawfully carrying a weapon. Incident to the arrest, the officers searched the suitcase and discovered cocaine worth an estimated $5,000.00, a brown holster, and a cocaine sifter. This evidence formed the basis of appellant's conviction.

The Fourteenth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution forbid unreasonable searches and seizures. Appellant contends that his initial detention constituted an unreasonable seizure and that the cocaine, as the fruit of that illegality, was inadmissible. *See* TEX.CODE CRIM. PROC.ANN. art. 38.23 (Vernon 1979); *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963). We need not determine this issue because we hold that the intervening criminal act purged the taint of any illegality.

In a suppression hearing the State is not required to prove the propriety of a search or seizure beyond a reasonable doubt. *Lalande v. State*, 676 S.W.2d 115, 117 (Tex.

Crim.App.1984) (en banc). Further, the trial judge acts as the trier of fact. Thus, the judge must weigh the credibility of the witnesses and their testimony and may accept or reject any or all of the testimony and evidence. *Taylor v. State*, 604 S.W.2d 175, 177–78 (Tex.Crim.App.1980); *Draper v. State*, 539 S.W.2d 61, 62–63 (Tex.Crim. App.1976); *Tomtishen v. State*, 688 S.W.2d 138, 139 (Tex.App.—Corpus Christi 1985); *Alexander v. State*, 630 S.W.2d 355, 357 (Tex.App.—Houston [1st Dist.] 1982, no pet.).

Although some discrepancy appears in the trial testimony and in the motion to suppress, and although it is undisputed that Officer Flynn retrieved appellant's loaded gun from appellant's right pocket, Flynn testified that "[a gun] appear[ed] to have been pointed in [his] direction" and that "it looked like [sic] he had pointed a gun at [me]." We hold that the evidence was sufficient to support the trial court's implied finding that Flynn saw appellant point a gun at him and that Flynn was in reasonable fear of his safety. *See Mayhood v. State*, 669 S.W.2d 873, 874 (Tex. App.—Corpus Christi 1983, pet. ref'd); *Lopez v. State*, 660 S.W.2d 592, 595 (Tex.App. —Corpus Christi 1983, pet. ref'd).

An officer "may, without a warrant, arrest an offender when the offense is committed in his presence ... if the offense is one classed as a felony or as an offense against the public peace." TEX.CODE CRIM.PROC.ANN. art. 14.01(a) (Vernon 1977). Appellant was arrested for attempted capital murder and possession of a prohibited weapon. Both offenses are classified as felonies. *See* TEX.PENAL CODE ANN. § 19.03(b) (Vernon 1974); TEX.PENAL CODE ANN. § 46.06(e) (Vernon Supp.1985). Thus, the shooting incident gave Flynn probable cause to arrest appellant, and the arrest was legal. Consequently, the officers were authorized to search, incident to the lawful arrest, appellant's person and the area within his immediate control. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38

L.Ed.2d 427 (1973); *Christopher v. State,* 639 S.W.2d 932, 935 (Tex.Crim.App.1982).

Appellant argues that, irrespective of the intervening legal arrest, the cocaine was tainted by the alleged prior illegal stop and, accordingly, was inadmissible. We disagree.

Otherwise tainted evidence is admissible if the nexus between the illegal arrest and the means through which the evidence was secured has "become so attenuated as to dissipate the taint." *Wong Sun,* 371 U.S. at 491, 83 S.Ct. at 419; *United States v. Houltin,* 566 F.2d 1027, 1030 (5th Cir.), *cert. denied,* 439 U.S. 997, 99 S.Ct. 600, 58 L.Ed.2d 671 (1978); *Armstrong v. State,* 550 S.W.2d 25, 31 (Tex.Crim.App.1976) (on motion for rehearing). Thus, we must determine "whether, granting establishment of the primary illegality, the evidence to which objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun,* 371 U.S. at 488, 83 S.Ct. at 417. Factors that elucidate the extent of attenuation, if any, include the temporal proximity of the illegal arrest to the discovery of evidence, the presence of intervening circumstance between the arrest and the search, and the purpose and flagrancy of the official misconduct. *United States v. Tookes,* 633 F.2d 712, 716 (5th Cir.1980); *Wicker v. State,* 667 S.W.2d 137, 141 (Tex.Crim.App. 1984) (en banc).

We conclude that the intervening offense purged the taint of any unlawful invasion. The intervening circumstance was an act of free will, and the police misconduct was not purposeful or flagrant. The almost simultaneous occurrence of the illegal detention, the criminal act, and the search tends to support a finding of a causal connection between any initial illegality and the discovery of the cocaine, but the Supreme Court in *Wong Sun* rejected a "but for" test. The Court declined to "hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police."

Language in Fifth Circuit and Court of Criminal Appeals cases supports our holding of attenuation. *See, e.g., United States v. Butts,* 729 F.2d 1514, 1518 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 181, 83 L.Ed.2d 115 (1984) (if, following an illegal arrest, defendant commits another criminal act in a public area, the officer, who would not have seen defendant but for the illegal arrest, may lawfully seize evidence derived from commission of subsequent criminal act); *United States v. King,* 724 F.2d 253, 256 (1st Cir.1984) (even if there was some illegality in the conduct of officers in attempting to search the defendant at the highway rest stop in which he and another individual were sitting in a car, police officer had probable cause to search defendant after the other individual began firing gun since the shooting was independent intervening act which purged taint of prior illegality); *United States v. Walker,* 535 F.2d 896, 899 (5th Cir.1976), *cert. denied,* 429 U.S. 982, 97 S.Ct. 498, 50 L.Ed.2d 592 (1976); *United States v. Egan,* 501 F.Supp. 1252, 1268 (S.D.N.Y.1980) (even if arrest and search of defendant were illegal, discovery of marijuana on ship was not fruit of any illegality but resulted from recovering and testing two bales of marijuana thrown overboard from ship—an intervening act that purged the taint); *Dugger v. State,* 402 S.W.2d 178, 179–80 (Tex.Crim.App.1966) (illegal arrest does not render inadmissible evidence thereafter obtained if detention following initial illegal arrest was lawful). Accordingly, we hold that the intervening offense was an act of free will that purged the taint of any illegal detention. Consequently, we affirm.