**STATE of Maine**

v.

**Patricia NICHOLS.**

Supreme Judicial Court of Maine.

Sept. 5, 1974.

Charles K. Leadbetter, Vernon I. Arey, Asst. Attys. Gen., Augusta, for plaintiff.

Richardson, Hildreth, Tyler & Troubh by Ronald D. Russell, William B. Troubh, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD, and DELAHANTY, JJ.

WEATHERBEE, Justice.

On November 9, 1972, Wendy Nichols, the daughter of Richard and Patricia Nichols, was taken to hospitals in Brunswick and Portland and died three days thereafter. Mr. Nichols was subsequently charged with felonious homicide punishable as manslaughter relating to his daughter's death and was acquitted of that charge by the Court on June 29, 1973. He then entered a guilty plea to a separate charge of high and aggravated assault.

On July 5, 1973, Mrs. Nichols was indicted by a grand jury for felonious homicide punishable as murder for the death of Wendy. In September of 1973 the State filed a "Motion to Compel the Production of Evidence" in connection with Mrs. Nichols' case. Hearing was held, and the motion was denied by a Superior Court Justice. It is from the denial of this pretrial motion that the State has appealed under 15 M.R.S.A. § 2115–A and M.R. Crim.P., Rule 37A(b). The State's appeal is denied.

Recitation of some background circumstances highlights the issues presented by the State's appeal. The Justice at the hearing made factual findings which we hereby adopt. In relevant part, the Justice noted the following facts, commencing with the arrest of Mr. Nichols after the death of his daughter.

"Patricia Nichols contacted the law office of Fitzgerald, Donovan & Conley P. A. seeking representation for her husband. Attorneys Fitzgerald and Conley agreed to represent Mr. Nichols. On this date and at subsequent meetings between Mrs. Nichols and the attorneys, communications were conducted. These communications between Mrs. Nichols and the attorneys were at the insistence of the attorneys and were conducted

only after Mrs. Nichols had been assured by the attorneys that any and all communications were to be kept in strictest confidence and would not be divulged. The attorneys considered themselves to be protecting the interests of both Richard and Patricia Nichols until shortly before trial when the attorneys suggested that she obtain other counsel. After the trial of Richard Nichols had begun, counsel was appointed to apprise Mrs. Nichols of her right not to incriminate herself."

By its motion the State is effectively seeking to obtain what it feels is material evidence for Mrs. Nichols' trial from the two attorneys who represented Mr. Nichols. The attorneys have balked at this suggestion, claiming that the attorney-client privilege protects their communications with Mrs. Nichols.

The State asserts in its motion that it "has reason to believe that in the process of preparing their defense of Richard Nichols, attorneys Fitzgerald and Conley interviewed and obtained from Patricia Nichols, certain evidence, both oral and written, which is material in the instant case". Also, "[t]he State does not know whether certain evidence is inculpatory or exonerative in its effect".

The State concludes by asking the Court to hold a hearing and take evidence on the privilege question. If no privilege were to be found, then the State urges that the attorneys "be ordered to make any such evidence available to both the State and the defense for use in the instant case."

As noted, a hearing was held, the transcript of which is included in the record on appeal. After listening to the testimony of attorneys Fitzgerald and Conley, the Justice filed a written opinion which denied the relief sought by the State. In the opinion the Justice found generally: (1) that Mrs. Nichols' conversations did come within the confines of the attorney-client privilege with the two attorneys; (2) that forcing attorneys to testify about state-

ments made to them as professionals is dangerous, especially in criminal cases; (3) that the State's motion is, in effect, one for discovery which is not allowed the State by statute, and even if it were, would not be allowed here due to the request's lack of specificity; (4) that no necessity for the information has been shown on the grounds that a miscarriage of justice might occur if the information sought is not made available.

We are of the firm opinion that the State's attempt to "compel the production of evidence" is not authorized by rule or statute. Therefore, as it is not necessary to our decision, we will not reach the attorney-client privilege issue.

The State asserts that its motion is properly before the Court under the authority of M.R.Crim.P., Rule 57(a). That rule states:

"When no procedure is specifically prescribed the court shall proceed in any lawful manner not inconsistent with the Constitution of the State of Maine, these rules, or any applicable statutes."

The State claims that its motion is justified under Rule 57(a) because no other rule covers the situation at hand and because the request does not conflict with the Maine Constitution, any rule, or any statute.

Only Rules 15, 16 and 17 can be postulated as possibly bearing on the circumstances before us. The State has made no claim that Rule 15, which allows the taking of depositions and the production of non-privileged documents and objects under limited circumstances, has any application to the issue at hand. We agree and need not concern ourselves with the scope of relief afforded under Rule 15.

Rule 16 consists of two separate parts, the first dealing with discovery and inspection and the second with notice of alibi. Part (a) begins by noting that the prosecutor will be ordered to allow the defendant to inspect and copy certain evi-

dence only "[u]pon timely motion of a defendant and upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable . . . ." State v. Cloutier, Me., 302 A.2d 84 (1973) (defendant's request). The very wording of Rule 16(a) indicates that its provisions are applicable solely to defendants.

Furthermore, discovery as a concept deals with the relation between adversary parties[1] and the need for documentary, not verbal, evidence. The rule having allowed only the defense to use discovery in a criminal action, it is clear that the State has no power under Rule 16(a) to discover this documentary evidence. As to oral evidence, neither party has the authority to discover such testimony before trial under this rule.

■ Rule 16(b) allows the prosecution to demand and receive a notice of alibi. This portion of Rule 16 is for the benefit of the State.[2] In no way does this provision allow the State to discover more than the time and place at which a defendant claims to have been, if such an alibi defense will be used at trial. Therefore, it is also clear that no aspects of Rule 16 explicitly apply to our case.

■ Rule 17 allows the issuance of subpoenas to compel the attendance of witnesses at judicial proceedings. The subpoena may also compel a person to produce certain documents or objects.[3] In this latter use,

the subpoena has traditionally been called a "subpoena duces tecum". This power to produce is subject to the court's discretionary modification or quashing if constitutional rights are violated or compliance is unreasonable or oppressive. The State itself admits that its request for oral and written evidence is not sustainable under Rule 17, which is limited to documentary evidence.

The State also claims that delay and possible injustice could result under Rule 17, as a hearing would be required prior to trial.

■ It is totally evident from Rule 17(a) that both the State and the defendant have the authority to produce witnesses at trial through the subpoena power. This power relates to a "judicial proceeding", which includes, of course, any pre-trial hearing held by the court.[4] However, there is no language in this rule which allows a Justice to call a pre-trial hearing to permit the State to learn what testimony a witness would give if presented at trial. If the State encounters a recalcitrant witness, it has no ability to compel the person to speak prior to the judicial proceeding at which his testimony is desired. At that time one who wrongfully refuses to testify orally may be punished by the criminal contempt sanction.

■ Rule 17(c) does enable a party[5] to subpoena "books, papers, documents or

---

1. The State's motion is directed toward the two attorneys and alleges that no attorney-client privilege existed between them and Mrs. Nichols existed. If, of course, the attorneys were deemed to be her personal attorneys at the time of the supposed statements, then the discovery procedures between *adversaries* would theoretically be operable. However, it is clear from the rules and statutes that no discovery currently exists for the State except as to alibi; therefore, the attorney-client issue is not critical here.

2. We held in State v. Lizotte, Me., 249 A. 2d 874 (1969) that an ancillary benefit does result to a defendant in that a demand for notice of alibi under Rule 16(b) is equivalent to a bill of particulars.

3. It is certain that such uses of the subpoena power could not be upheld if the two attorneys were found to be the personal attorneys of Patricia Nichols. Again we note that the present case is not postured in terms of Rule 17, thereby not mandating our discussion of the attorney-client problem.

4. For examples, hearings on challenges to grand jurors under M.R.Crim.P., Rule 6(b) (1); hearings on motions raising defenses under Rule 12(b); hearings on discovery under Rule 16(a); hearings on motions for change of venue under Rule 21; hearings on motions to suppress under Rule 41(e).

5. F.R.Crim.P., Rule 17(c) has been held not to be a discovery device. *E. g.*, United States v. Purin, 486 F.2d 1363, 1368 (2d Cir. 1973);

other objects designated therein". That provision also provides that such objects may be produced for inspection prior to trial if so ordered by the court. It is conceivable that the alleged written evidence sought by the State might be included under the working of Rule 17(c).[6] However, we do not face here review of a court's action under Rule 17(c). No subpoena has issued, and no objections to such a subpoena exist in the form of a motion to quash. As did the Justice at the hearing, we must treat the State's motion under Rule 57.

We believe that the general import of Rule 57 is to maintain flexibility within the criminal procedure system. *Cf.* M.R.C.P., Rule 81(f). It is not intended to encourage radical, uncommon, or unapproved techniques which might possibly be devised to deal with a particular area left untouched by the Rules. According to the reporter's notes in 3 H. Glassman, Maine Practice § 57.1 (1967), the rule is very similar to F.R.Crim.P., Rule 57(b). The federal rule has been construed rather conservatively, often in the light of existing practice in the area. *See* United States v. Spock, 416 F.2d 165, 180–183 (1st Cir. 1969); United States v. Remolif, 227 F. Supp. 420, 423 (D.Nev.1964).

The flexibility purpose of Rule 57 would not be enhanced were we to allow the State to succeed in its "motion to compel the production of evidence". There is no local practice or tradition which sanctions the State's attempt to produce oral and written evidence from the two attorneys. We believe that procedures adopted under the aegis of Rule 57 should not violate the spirit and intent of existing rules.

United States v. Schembari, 484 F.2d 931, 936 (4th Cir. 1973); United States v. Marcello, 423 F.2d 993, 1006 (5th Cir.), cert. denied, 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed. 2d 543 (1970). We believe that Rule 17(c) should not be used to circumvent discovery procedures under Rule 16(a). Of course, if the 17(c) subpoena is not directed to a party, there is no "discovery" problem in the narrow sense.

In the present case Rule 17 specifies the procedures to be followed in seeking the testimony of witnesses or documentary evidence. These limited rules should not be expanded by a broad interpretation of Rule 57 to allow parties to delve into matters not the subject of currently effective rules. Such a power should arise, if at all, only by the promulgation of new rules provisons which would be adopted after opportunity for consideration by the Advisory Committee on Criminal Rules and for notice to and comment by interested persons in the spirit of our order of January 21, 1974.

Having accepted the Justice's view that the motion could be entertained, if at all, under Rule 57, we also agree with his holding that the State's motion is not allowable under the Rule.

In addition to seeking the production of certain oral and written evidence, the State wishes to have the issue of privilege determined at a hearing prior to trial. In response to this motion the Justice held such a hearing and determined the privilege issue adversely to the State.

Ordinarily a privilege question is handled at trial outside the hearing of the jury and is resolved by the presiding Justice as a so-called preliminary question of fact. In our case, the State hopes for an earlier determination of the issue presumably so that it may know what evidence will be available in its case against Mrs. Nichols.

We recognize the dilemma presented to the State by the above situation. However, we can ascertain no authority which allows the State to move for such a pretrial hearing.

6. The language of F.R.Crim.P., Rule 17(c), which is very similar to the Maine rule, has been construed to allow the government, as a party, to use the subpoena duces tecum against a defendant in narrow instances. *See, e. g.,* United States v. Gross, 24 F.R.D. 138 (S.D.N.Y.1959); Annot., 96 A.L.R.2d 1224 (1964).

Certain pre-trial motions are customarily the subject of a hearing, such as a motion to suppress under Rule 41(e). Other motions may also be resolved prior to trial under the general authority of Rule 12. Rule 12(b)(1) states that "[a]ny defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion." In speaking of "defenses or objections" the Rule is restricted to motions by defendants, not prosecutors.

As we must find that our practice does not allow the State to raise the question of privilege by pre-trial motion, we do not reach the particular issue presented by the facts here.

The entry will be:

Appeal denied.

All Justices concurring.